1

2

3                                                                              O

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

11   ETELVINA DE LA TORRE,           )   Case No. CV 13-04302 DDP (JEMx)
                                      )
12                    Plaintiff,      )   **ORDER GRANTING IN PART AND**
                                      )   **DENYING IN PART DEFENDANTS'**
13          v.                        )   **MOTION TO DISMISS**
                                      )
14   AMERICAN RED CROSS, an           )
     entity unknown; RIO HONDO        )
15   CHAPTER OF THE AMERICAN RED      )   [Dkt. No. 8]
     CROSS, an entity unknown,        )
16                                    )
                      Defendants.     )
17   _____ )
                                      )
18

19        Presently before this Court is Defendants' Motion to Dismiss,

20   Motion for a More Definite Statement, and Motion to Strike (the

21   "Motion"). Having considered the submissions of the parties and

22   heard oral argument, the court grants the Motion in part, denies

23   the Motion in part, and adopts the following order.

24   **I. Background**

25        Plaintiff Etelvina De La Torre ("Plaintiff") brings this

26   action against the American Red Cross ("ARC") and the Rio Hondo

27   Chapter of the American Red Cross ("Rio Hondo") (collectively

28   "Defendants"). Plaintiff was recruited by Rio Hondo to become the

1   Executive Director of the Rio Hondo Chapter of the American Red
2   Cross. (Complaint ¶ 7.) She was recruited from another employer,
3   MALDEF, where she had been working for at least four years. (Id.)
4   In order to induce her to take the position at Rio Hondo, Plaintiff
5   alleges that Nancy Kindelan, the Regional CEO for the Rancho Region
6   of the American Red Cross, represented to her that she would be
7   groomed to replace Kindelan, who planned to retire in the near
8   future. (Id.) Plaintiff was also induced to take the position by
9   the promise of a $7,000 annual bonus. (Id. ¶ 8.) Plaintiff signed
10  her offer letter with Rio Hondo on January 21, 2010 and began work
11  in February 2010. (Id. ¶ 7, Exh. A.)

12      Plaintiff's employment with the Rio Hondo Chapter was at-will.
13  (Id. Exh. A.) Her employment contract states, in relevant part,
14  "the Red Cross ... has the right to transfer, reassign, suspend or
15  demote you, or may terminate your employment at any time for any
16  reason, with or without cause with or without notice. There is no
17  guarantee of long term employment." (Id.) In addition, the contract
18  contains an acknowledgment "that no representations, inducements,
19  promises or agreements, oral or otherwise, have been made between
20  you and the Rio Hondo Chapter ... which are not included in this
21  letter." (Id.)

22      Plaintiff alleges that while she was employed at Rio Hondo,
23  Ms. Kindelan, who was her supervisor, treated Hispanic employees
24  differently from others. (Id. ¶ 9.) Plaintiff alleges that Kindelan
25  once referred to Plaintiff as her "Latina token." (Id. ¶ 10.)
26  Plaintiff also witnessed inappropriate treatment of other Hispanic
27  employees. (Id. ¶¶ 9-10.) Plaintiff also alleges that she never
28  received her bonus payments as required by her contract, receiving

1  approximately $6,000 of the promised $7,000 in June 2011 and no

2  bonus payment in June 2012. (Id. ¶ 11.)

3      Not long after Plaintiff was hired by Rio Hondo, ARC began a

4  massive reorganization. (Id. ¶ 13.) In August of 2012, Plaintiff's

5  position was eliminated as part of the restructuring. (Id.)

6  Plaintiff alleges that this "elimination" was mere pretext for

7  discrimination against her because of her race and/or national

8  origin. (Id. ¶ 15.)

9      Plaintiff originally filed this action in the Los Angeles

10  County Superior Court; Defendants removed the case to this Court.

11  (Notice of Removal, Dkt. 1.) Plaintiff advances eleven causes of

12  action. (Complaint, Dkt. 2.) Among these, Plaintiff claims that she

13  was fraudulently induced to leave her position with MALDEF due to

14  promises that she would soon be promoted to Regional CEO. (Id. ¶¶

15  27-37.) Plaintiff also advances several claims relating to Rio

16  Hondo's failure to pay her bonuses. (Id. ¶¶ 38-69.) Plaintiff also

17  claims that her termination was due to her race and/or national

18  origin. (Id. ¶¶ 17-26.)

19  **II. Legal Standard**

20      A complaint will survive a motion to dismiss when it contains

21  "sufficient factual matter, accepted as true, to state a claim to

22  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

23  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

24  570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

25  "accept as true all allegations of material fact and must construe

26  those facts in the light most favorable to the plaintiff." Resnick

27  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

28  need not include "detailed factual allegations," it must offer

1  "more than an unadorned, the-defendant-unlawfully-harmed-me
2  accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or
3  allegations that are no more than a statement of a legal conclusion
4  "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In
5  other words, a pleading that merely offers "labels and
6  conclusions," a "formulaic recitation of the elements," or "naked
7  assertions" will not be sufficient to state a claim upon which
8  relief can be granted.  <u>Id.</u> at 678 (citations and internal
9  quotation marks omitted).
10      "When there are well-pleaded factual allegations, a court should
11  assume their veracity and then determine whether they plausibly
12  give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs
13  must allege "plausible grounds to infer" that their claims rise
14  "above the speculative level." <u>Twombly</u>, 550 U.S. at 555.
15  "Determining whether a complaint states a plausible claim for
16  relief" is a "context-specific task that requires the reviewing
17  court to draw on its judicial experience and common sense."  <u>Iqbal</u>,
18  556 U.S. at 679.

**III. Discussion**

20      In their Motion, Defendants argue that ARC should be dismissed
21  from this action because it is not a proper defendant. Defendants
22  also argue, with respect to some of Plaintiff's causes of action,
23  that Plaintiff's complaint is insufficient under Rule 12(b)(6).

**A. American Red Cross as Defendant**

25      Defendant argues that courts in other cases have determined
26  that ARC is an improper defendant when an employee of a Red Cross
27  chapter files an employment-related grievance, and that, therefore,
28  ARC is an improper defendant here. <u>See, e.g.</u>, <u>Owens v. American</u>

4

1   <u>National Red Cross</u>, 673 F. Supp. 1156 (1987); <u>Webb v. American Red</u>
2   <u>Cross</u>, 652 F. Supp. 917 (1986). These cases, however, were decided
3   at summary judgment rather than on motions to dismiss. Various
4   tests that courts have adopted to determine whether a joint
5   employer situation is present under California law turn on "the
6   nature of the work relationship of the parties, with emphasis upon
7   the extent to which the defendant controls the plaintiff's
8   performance of employment duties." <u>Vernon v. State of California</u>,
9   116 Cal. App. 4th 114, 124 (2004). "[T]he precise contours of an
10  employment relationship can only be established by a careful
11  factual inquiry." <u>Graves v. Lowery</u>, 117 F.3d 723, 729 (3d Cir.
12  1997).
13       At this stage, the factual record is not sufficiently
14  developed to make a "careful factual inquiry" to determine whether
15  ARC was a joint employer of Plaintiff with Rio Hondo. The fact that
16  ARC has been found not to be a joint employer with other local
17  chapters in other cases at the summary judgment stage is
18  insufficient to demonstrate that the analysis would necessarily be
19  the same for every local chapter and every employment situation.
20  Therefore, Defendants' Motion is DENIED as to Defendant ARC.
21       **B. Sufficiency of the Complaint**
22       Defendants do not challenge the sufficiency of the following
23  causes of action: first cause of action (race/national origin
24  discrimination), second cause of action (wrongful termination),
25  fifth cause of action (breach of contract), and eighth cause of
26  action (failure to pay wages in violation of Cal. Labor Code §§ 201
27  and 203). Therefore, these causes of action remain operative.
28

1            <u>1. Third and Fourth Causes of Action (Intentional and/or</u>

2            <u>Negligent Misrepresentation and/or Failure to Disclose</u>

3            <u>Material Facts; Promissory Estoppel)</u>

4     Defendants argue that Plaintiff fails to state a claim for

5 fraud or misrepresentation, or for promissory estoppel. The

6 elements of a cause of action for fraud or misrepresentation are:

7 (1) a misrepresentation about a past or existing fact, or

8 concealment of such facts when under a duty to disclose; (2)

9 scienter; (3) intent to induce reliance on the misrepresentation;

10 (4) justifiable reliance; and (5) resulting damages. <u>Cadlo v.</u>

11 <u>Owens-Illinois, Inc.</u>, 125 Cal. App. 4th 513, 519 (2004). In an

12 action for fraud, "a party must state with particularity the

13 circumstances constituting fraud or mistake." Fed. R. Civ. Proc.

14 9(b). The elements are the same for negligent misrepresentation,

15 except that there is no requirement of intent to induce reliance.

16     In her opposition, Plaintiff reframes her third and fourth

17 claims as a single claim for "promissory fraud," a type of fraud

18 claim. (Opp. to Motion, Dkt. 15.) She does not contest Defendants'

19 argument that her promissory estoppel claim should be dismissed.

20 Therefore, the Motion is GRANTED as to Plaintiff's claim for

21 promissory estoppel.

22     Contrary to Defendants' assertions that the underlying alleged

23 misrepresentations are not actionable, Plaintiff's claims that

24 Kindelan represented to her that she would be promoted to Regional

25 CEO and that Kindelan failed to disclose that the ARC would be

26 undergoing a reorganization in the near future are viable.

27 Plaintiff's allegations meet the heightened pleading requirement

28 for fraud claims, as they state with specificity the statements

that were made (that Plaintiff was being groomed to become the
Regional CEO) and omitted (that ARC would be undergoing a
restructuring), the persons who made those statements (Ms. Kindelan
and the Red Cross search committee who interviewed Plaintiff), and
when those statements were made (during her recruitment).
(Complaint ¶¶ 7, 13-14, 28-31.) Plaintiff's inclusion of these
details is sufficient to meet the heightened pleading requirements
of Rule 9(b). Therefore, Plaintiff has sufficiently pled the first
element of her fraud claim regarding the alleged misrepresentation.

Plaintiff has also sufficiently pled each of the remaining
elements of her fraud claim. Plaintiff alleges that Kindelan and
Rio Hondo knew or should have known that organizational
restructuring was imminent and that their failure to inform her of
this fact was intended to induce her to rely on their
representations regarding her potential promotion to Regional CEO
in order to get her to accept the Executive Director position.
(Complaint ¶¶ 28-31.) Plaintiff also alleges that she did, in fact,
rely on Defendants' representations, and that as a result she
suffered damage, as she would not have left her stable position at
MALDEF but for those assurances. (Id. ¶¶ 28-33.)

Defendants argue that Plaintiff's reliance on Kindelan's oral
statements regarding her potential future as Regional CEO is not
reasonable in light of the employment contract. Defendants cite
case law holding that where an employee is terminated but signed an
at-will employment contract, the employee cannot assert a claim for
fraud on the basis of assurances that their employment would be
long term. See, e.g., Dore v. Arnold Worldwide, Inc., 39 Cal. 4th
384, 393-94 (2006); Slivinsky v. Watkins-Johnson Co., 221 Cal. App.

7

3d 799, 807 (1990). In those cases, however, the oral promise of long-term employment was directly contradicted by an express term of the employment agreement stating that the employment was at-will. However, in this case nothing in the employment agreement clearly contradicts the oral promises Plaintiff alleges were made and the information Plaintiff alleges was omitted. Therefore, Defendants' Motion is DENIED with respect to this cause of action.

### 2. Sixth Cause of Action (Breach of the Covenant of Good Faith and Fair Dealing)

Defendants argue that Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing. Defendants argue that this cause of action is superfluous, as Plaintiff does not allege sufficient facts to support a claim for any relief beyond that available for breach of contract. Therefore, Defendants argue that this cause of action should be dismissed as surplusage.

Plaintiff's breach of contract claim is based on the failure of Defendants to pay her the full amount due under the bonus clause of her contract, which states: "You will receive an annual bonus of $7000, first eligible June 30, 2011." (Complaint, Exh. A.) Plaintiff alleges that she received only a $6,000 bonus in 2011 and no bonus payment in 2012. (Id. ¶ 41.) It is unclear from Plaintiff's complaint whether she intends to assert that her termination was also a breach of contract.

"If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated. Thus, absent those limited

1   cases where a breach of a consensual contract term is not claimed
2   or alleged, the only justification for asserting a separate cause
3   of action for breach of the implied covenant is to obtain a tort
4   recovery." Careau & Co. v. Security Pacific Business Credit, Inc.,
5   222 Cal. App. 3d 1371, 1395 (1990). "[T]he remedy for breach of an
6   employment agreement, including the covenant of good faith and fair
7   dealing implied by law therein, is solely contractual." Guz v.
8   Bechtel Nat. Inc., 24 Cal. 4th 317, 352 (2000). Plaintiff's
9   complaint asserts only that there was a contract breach, committed
10  in bad faith, and therefore that Defendants have breached the
11  covenant of good faith and fair dealing. Therefore, Plaintiff's
12  claim for a breach of the implied covenant is surplusage and
13  Defendants' Motion is GRANTED as to this cause of action.

14         3. Seventh Cause of Action (Failure to Pay Timely Wages
15         in Violation of Labor Code Section 204)

16      Defendants argue that Plaintiff's cause of action for failure
17  to pay timely wages in violation of Labor Code Section 204 fails to
18  state a claim. Defendants argue that there are two reasons why this
19  claim should be dismissed: (1) there is no private right of action
20  for violation of Labor Code Section 204, and (2) Labor Code Section
21  204 does not govern the timing of contractual bonus payments. The
22  Court need not decide whether a private right of action exists for
23  violation of Labor Code Section 204, as Plaintiff's cause of action
24  may be dismissed for the second reason.

25      The text of California Labor Code Section 204 states:
26      All wages ... earned by any person in any employment
27      are due and payable twice during each calendar month,
28      on days designated in advance by the employer as the

1     regular paydays. Labor performed between the 1st and

2     15th days, inclusive, of any calendar month shall be

3     paid for between the 16th and the 26th day of the

4     month during which the labor was performed, and labor

5     performed between the 16th and the last day,

6     inclusive, of any calendar month, shall be paid for

7     between the 1st and 10th day of the following month.

8  Cal. Labor Code § 204(a).

9       "The sole purpose of [California Labor Code Section 204] is to

10  require an employer of labor who comes within its terms to maintain

11  two regular pay days each month, within the dates required in that

12  section." In re Moffett, 19 Cal. App.2d 7, 13, 64 P.2d 1190 (1937).

13  Labor Code Section 204(a) deals solely with the timing of wages and

14  not with whether the correct wages were paid. See Hadjavi v. CVS

15  Pharmacy, Inc., 2010 WL 7695383 (C.D. Cal. 2010). Plaintiff does

16  not allege that Defendants did not maintain two regular pay days

17  each month. Therefore, Defendants' Motion is GRANTED as to

18  Plaintiff's Section 204 claim.

19          4. Ninth Cause of Action (Violation of California Labor

20          Code Section 226)

21      Defendants argue that Plaintiff fails to state a claim for

22  violation of California Labor Code Section 226. Defendants argue

23  that there are two reasons why this claim, or portions of it,

24  should be dismissed: (1) Plaintiff has not alleged that she

25  suffered any legally cognizable injury, and (2) Plaintiff's claim

26  as to her 2011 bonus is time-barred.

27      Plaintiff alleges a violation of California Labor Code Section

28  226 on the grounds that Defendants failed to provide her with an

1  "accurate itemized statement showing Plaintiff's gross earned

2  wages." "Because § 226(e) requires the demonstration of an actual

3  suffered injury, the deprivation of the information required by §

4  226(a), 'standing alone, is not a cognizable injury.'" Reinhardt v.

5  Gemini Motor Transp., 869 F. Supp. 2d 1158, 1169 (E.D. Cal. 2012)

6  (quoting Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1143

7  (2011)). An employee is deemed to suffer an injury when there is an

8  inaccuracy in any of the required information under Section 226(a)

9  and the employee cannot "promptly and easily determine from the

10  wage statement alone ... the amount of the gross wages paid to the

11  employee during the pay period." Cal. Labor Code § 226(e)(2)(B).

12      Plaintiff does not sufficiently allege a cognizable injury

13  under the statute. While Plaintiff does allege that the failure to

14  include her bonus payments on her paycheck constitutes an

15  inaccuracy, Plaintiff does not properly allege that her paycheck

16  was such that she could not "promptly and easily determine" from

17  the wage statement the amount of gross wages or net wages actually

18  paid to her during the pay periods at issue. She has instead simply

19  alleged that the amount she was paid was incorrect. As a result,

20  she has not alleged actual injury resulting from the inaccuracy on

21  her wage statement as required by Section 226. Therefore,

22  Defendants' Motion is GRANTED with respect to Plaintiff's Section

23  226 claim, with leave to amend should Plaintiff be able to allege

24  facts showing that she could not easily ascertain the amount of

25  wages actually paid to her or one of the other requirements under

26  226(e)(2)(B).

27      With respect to the time bar issue, to the extent that

28  Plaintiff seeks to amend to show actual injury, Plaintiff cannot

11

1    recover statutory damages based on her allegations of inaccurate

2    wage statements on her June 2011 wage statement. "If a plaintiff

3    attempts to obtain the statutory penalties provided by Labor Code §

4    226(e), then the one year statute of limitations of California Code

5    of Civil Procedure § 340(a) applies." Reinhardt, 869 F. Supp. 2d at

6    1169-70. The one year statute of limitations for a claim based on

7    Plaintiff's June 2011 wage statement expired prior to Plaintiff

8    filing this lawsuit on April 23, 2013. However, to the extent that

9    Plaintiff can show that the faulty wage statement for which she

10   seeks relief is either her June 2012 statement or her final

11   paycheck at the time of her termination in August 2012, Plaintiff's

12   claim for statutory damages is not time-barred.

13          **5. Tenth Cause of Action (Violation of California**

14          **Business and Professions Code §§ 17200 et seq.)**

15       Defendants argue that Plaintiff fails to state a claim for

16   violation of California Business and Professions Code Section 17200

17   et seq. Defendants argue that Plaintiff's claim improperly seeks

18   statutory penalties, which are not recoverable as restitution under

19   Section 17200. Pineda v. Bank of America, 50 Cal. 4th 1389, 1402

20   (2010).

21       Defendants are correct that Plaintiff may not seek penalties

22   as part of her claim for restitution. However, Plaintiff is not

23   seeking penalties under this cause of action. (Opp. to Motion, Dkt.

24   15.) Plaintiff's complaint states that she is "entitled to

25   restitution of all of the wages earned and due to her, any other of

26   Defendant's ill begotten gains, and injunctive relief prohibiting

27   Defendant from engaging in the unlawful, unfair, and fraudulent

28   payroll and advertising practices described herein. Plaintiff also

1   seeks interest on the amount of restitution awarded. Plaintiff also

2   seeks attorneys' fees." (Complaint ¶¶ 67-69.) None of this amounts

3   to Plaintiff seeking a "penalty." Therefore, Defendants' Motion is

4   DENIED as to Plaintiff's Section 17200 claim.

5        6. Eleventh Cause of Action (Intentional Infliction of

6           Emotional Distress)

7        Defendants argue that Plaintiff fails to state a claim for

8   intentional infliction of emotional distress ("IIED"). Defendants

9   argue that there are two reasons why this claim should be

10  dismissed: (1) the claim is barred by the Workers' Compensation

11  Act, and (2) Plaintiff has not alleged extreme and outrageous

12  conduct by Defendants.

13       Defendants' first argument is unavailing. "It is true that

14  generally an employee can have no tort recovery for emotional

15  distress resulting from his employment... However, a plaintiff can

16  recover for infliction of emotional distress if he or she has a

17  tort cause of action for wrongful termination in violation of

18  public policy or wrongful termination in violation of an express

19  statute because then, emotional distress damages are simply a

20  component of compensatory damages." Phillips v. Gemini Moving

21  Specialists, 63 Cal. App. 4th 563, 577 (1998). Plaintiff's claims

22  that she was terminated because of her race and/or national origin

23  clearly allege a violation of public policy and a violation of

24  FEHA. Therefore, Plaintiff is not precluded by the Workers'

25  Compensation Act from bringing her claim for IIED.

26       However, Plaintiff's allegations are insufficient to rise to

27  the level of "extreme and outrageous conduct." A claim for IIED

28  exists when there is "(1) extreme and outrageous conduct by the

13

1   defendant with the intention of causing, or reckless disregard of

2   the probability of causing, emotional distress; (2) the plaintiff's

3   suffering severe or extreme emotional distress; and (3) actual and

4   proximate causation of the emotional distress by the defendant's

5   outrageous conduct." Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009).

6   While some of the comments that Plaintiff alleges were made by

7   Kindelan and others at Rio Hondo were inappropriate, they were not

8   so outrageous as to "exceed all bounds of that usually tolerated in

9   a civilized society." Potter v. Firestone Tire & Rubber Co., 6 Cal.

10  4th 965, 1001 (1993). Further, the fact that Defendants terminated

11  Plaintiff is not extreme and outrageous conduct, even if the

12  motivation for her termination was racial animus. Therefore,

13  Defendants' Motion is GRANTED as to Plaintiff's IIED claim.

14  **IV. Conclusion**

15      For the reasons stated above, Defendants' Motion to Dismiss is

16  GRANTED IN PART and DENIED IN PART. Should she so choose, Plaintiff

17  may amend her complaint consistent with this Order.

18

19  IT IS SO ORDERED.

20

21

22  Dated: October 9, 2013

23                                      DEAN D. PREGERSON
                                        United States District Judge

24

25

26

27

28